J-S11035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRICK MICHAEL GLEASON | : | |
| | : | |
| Appellant | : | No. 581 WDA 2021 |

Appeal from the PCRA Order Entered April 12, 2021
In the Court of Common Pleas of Potter County
Criminal Division at No(s):  CP-53-CR-0000067-2016

BEFORE:  PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED:  August 29, 2022**

Derrick Michael Gleason ("Gleason") appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

We summarize the factual and procedural history of this appeal from the record.  In an early evening in September 2015, Gleason was driving at high speed and attempted to pass a truck on State Route 872, a two-lane highway, when he struck an oncoming vehicle driven by Steven Wimer ("Wimer").  The crash killed the two passengers in Gleason's vehicle, Jessica McKay ("McKay"), who was in the front passenger seat, and Collene Ackley-Churchill ("Ackley-Churchill"), who was in the back seat.  McKay and Ackley-Churchill both died at the scene.  Gleason and Wimer suffered serious injuries.  Following an investigation, the Commonwealth charged Gleason with homicide by vehicle

_____

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

for the deaths of McKay and Ackley-Churchill, aggravated assault by vehicle as to Wimer, and numerous related offenses.[2]

At Gleason's jury trial, the parties presented undisputed evidence that Gleason was with McKay and had picked up Ackley-Churchill before going to meet his parole officer.[3] Gleason passed other cars at high speeds before attempting to pass the truck on Route 872. He was in the opposing lane of travel when he entered a bend in the road. Wimer was approaching the bend from the opposite direction. Wimer saw the truck exit the bend and pass by him and then saw Gleason's car in his lane of travel only moments before the crash. *See* N.T. Trial Day 1, 2/13/17, at 69, 77. The area was designated as a no-passing zone, and the speed limit in Gleason's direction of travel was fifty-five miles per hour. *See id*. at 125-26, 130.

The Commonwealth's accident reconstruction expert testified that Gleason was driving at eighty-three miles per hour before starting to brake. *See id*. at 128-29, 131. Gleason's counsel ("trial counsel") pursued a defense strategy emphasizing that due to the possibility that Gleason's brakes malfunctioned, the Commonwealth's expert could not reliably estimate

_____

[2] *See* 75 Pa.C.S.A. §§ 3732(a), 3732.1(a); *see also* 18 Pa.C.S.A. §§ 2702(a)(1), 3304(a)(2), 2504(a), 2701(a)(1), 2705; 75 Pa.C.S.A. §§ 3714, 3736, 3309, 3361, 3301, 3306, 3305.

[3] We note that the references to Gleason's parole and testimony from Gleason's parole officer provided the full story of this case. Gleason did not object to the testimony of his parole officer, *see* N.T. Trial Day 1, 2/13/17, at 5, and he later testified that he had been driving to meet the parole officer before the crash, *see* N.T. Trial Day 2, 2/14/17, at 153. Gleason does not assert the reference to his parole was prejudicial.

Gleason's speed before the crash, and that the Commonwealth failed to preserve Gleason's and Wimer's vehicles for additional testing before trial. *See* N.T. Trial Day 3, 2/15/17, at 209-10. Trial counsel also highlighted the possibility that modifications to Wimer's vehicle, including its bumper and its height off the ground, contributed to the severity of the crash and the deaths of McKay and Ackley-Churchill.[4] The defense called its own accident reconstruction expert to testify in support of these theories.

At sidebar conferences during trial, trial counsel notified the court of Gleason's intent to testify about a justification defense. *See* N.T. Trial Day 2, 2/14/17, at 4-6; *see also* 18 Pa.C.S.A. § 503.[5] Gleason subsequently

_____

[4] The trial evidence indicated that Wimer's vehicle struck the driver's and passenger's compartment of Gleason's car after impact, sheared the roof off Gleason's car, and decapitated McKay. Ackley-Churchill was ejected from Gleason's car.

[5] Section 503 defines justification as follows:

> **(a) General rule.**—Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:
>
>> (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
>>
>> (2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
>>
>> (3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

*(Footnote Continued Next Page)*

testified, against trial counsel's advice. *See id*. at 148. Gleason asserted that McKay told him Ackley-Churchill was overdosing in the back seat and he began speeding to reach a hospital because there was no cellphone service in the area. *See id*. at 148, 155-56. He described adjusting his rearview mirror to look at Ackley-Churchill in the center of the back seat and stated she was "pasty white" and unconscious. *See id*. at 155, 171. He testified that McKay "turned around backwards [in the front passenger seat] . . . trying to smack her face and get her to come to." *See id*. at 171.

Gleason also testified that he began passing the truck on a straight portion of Route 872, but that the truck sped up, and then slowed going into the bend, which prevented him from returning to his proper lane of travel before the crash. *See id*. at 157, 175-76. He tried pumping his brakes so they would not lock up, but he began to slide and skid into the crash. *See id*. at 157. He estimated that he was driving at seventy-five miles per hour before the crash. *See id*.

The Commonwealth cross-examined Gleason using contradictory trial testimony from a witness, Jeffrey Beinhower ("Beinhower"), who had testified that he had been traveling in the same direction as Gleason on Route 872

---

**(b) Choice of evils.**—When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S.A. § 503.

when, approximately one and one-half to two miles before the accident scene, Gleason passed him at a high speed. Beinhower stated that as Gleason passed him, he saw a woman leaning forward from the back seat into the front compartment of Gleason's car and apparently talking with Gleason and a woman in the front passenger seat. *See id*. at 171. Additionally, the Commonwealth impeached Gleason with evidence that he did not tell police that Ackley-Churchill was overdosing, that he told his parole officer it was his fault Ackley-Churchill and McKay were dead, and that his memory of the accident and the overdose appeared to improve before trial. *See id*. at 166, 169. Trial counsel did not call additional witnesses aside from Gleason and his expert.

During closing statements, the Commonwealth argued that Gleason's testimony about Ackley-Churchill's overdose was "impossible" in light of Beinhower's testimony and was a recent fabrication. *See* N.T. Trial Day 3, 2/15/17, at 217, 228-30. The trial court instructed the jury that a justification defense did not apply. *See id*. at 260.

During its deliberations, the jury asked for the definitions of the offenses and to re-review Wimer's testimony about the injuries he suffered. *See id*. at 266-70. The jury then indicated that it was at a stalemate. *See id*. at 270. After the trial court responded to the jury's questions and issued instructions for them to deliberate further, the jury returned with guilty verdicts on the charges of homicide and aggravated assault by vehicle and six related counts. *See id*. at 270-75.

The trial court sentenced Gleason to an aggregate term of 140 to 280 months of imprisonment. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. *See **Commonwealth v. Gleason***, 185 A.3d 1121 (Pa. Super. 2018) (unpublished memorandum), *appeal denied*, 192 A.3d 1112 (Pa. 2018).

Gleason timely filed a *pro se* PCRA petition. The PCRA court appointed counsel who filed an amended petition alleging trial counsel's ineffectiveness for failing to investigate, obtain, and present evidence and witnesses in support of a justification defense.[6] The PCRA court held an evidentiary hearing and heard testimony from trial counsel, Gleason, and Gleason's mother, after which it scheduled a second hearing.

Before the second hearing, the Commonwealth discovered in its files a copy of a toxicology report indicating that Ackley-Churchill had alcohol and drugs in her system ("the toxicology report") at the time of the crash. The toxicology report stated that Ackley-Churchill's blood contained substances at the following levels:

- Ethanol: 37 mg/dL; blood alcohol concentration 0.037 g/100 ml

- Naloxone: positive

- Nicotine: positive

- 7-Amino Clonazepam: 74 ng/mL

_____

[6] The appointed attorney who filed the amended PCRA petition withdrew from the case. The PCRA court appointed new counsel ("PCRA counsel"). Gleason retained present counsel for this appeal.

- 6 -

- Morphine – Free: 40 ng/mL

- Hydromorphone – Free: 2.7 ng/mL

- Hydroxybupropion: 530 ng/mL

- 10-Hydroxycarbazepine: 10 mcg/mL

- Buprenorphine – Free: 95 ng/mL

- Norbuprenorphine – Free: 40 ng/mL

*See* Commonwealth's PCRA Exhibit 3 (NMS Labs Report at 1).

PCRA counsel filed a supplemental PCRA petition asserting a *Brady*[7] violation and a claim that trial counsel was ineffective for failing to obtain the toxicology report. The court thereafter held the second day of hearings, at which the prosecutor and trial counsel testified. Gleason did not present expert testimony about the toxicology report. Instead, he examined the prosecutor about the contents of the report. *See* N.T. PCRA Hearing Day 2, 1/26/21, at 12. The prosecutor, who had seen and was familiar with reading such reports, stated that the toxicology report indicated overdose levels of some substances, but based on the presence of naloxone, also known as "Narcan," in Ackley-Churchill's blood, the overdose had *not* occurred immediately before the crash. *See id*. at 13-15.

The prosecutor maintained that he disclosed the toxicology report during pretrial discovery; however, trial counsel testified that he did not see the toxicology report until the Commonwealth disclosed it before the second day

---

[7] *See Brady v. Maryland*, 373 U.S. 83 (1963).

of the PCRA evidentiary hearing. *See id*. at 7-8, 62. Trial counsel testified that he believed the toxicology report would have been helpful to rehabilitate Gleason's credibility at trial and in seeking reconsideration of the trial court's instruction that a justification defense did not apply. *See id*. at 67. Despite the existence of the toxicology report, however, trial counsel continued to believe that a justification defense was unavailable to Gleason. *See id*.

On April 12, 2021, the PCRA court denied relief on Gleason's ***Brady*** claim, concluding that while the Commonwealth inadvertently failed to disclose the toxicology report, the report was not material. ***See*** PCRA Court Opinion, 4/12/21, at 2, 4. The court found that the remaining ineffective assistance of counsel claims failed. ***See id***. at 6-7. Gleason timely appealed, and both he and the PCRA court complied with Pa.R.A.P. 1925.

Gleason raises the following issues for our review:

1. Whether the PCRA court committed reversible error by denying Mr. Gleason's PCRA claim that the Commonwealth commit[t]ed a . . . violation, pursuant to [***Brady***] and its progeny, where the Commonwealth failed to disclose the toxicology report . . . which was both material and exculpatory?

2. Whether the PCRA court committed reversible error by denying Mr. Gleason's PCRA claim that trial counsel was ineffective for failing to properly investigate, obtain and present the toxicology report[] . . . ?

3. Whether the PCRA court committed reversible error by denying Mr. Gleason's PCRA claim that trial counsel was ineffective for failing to properly investigate and call certain defense witnesses at trial who would have corroborated Mr. Gleason's testimony that he was speeding at the time of the accident because of a medical emergency?

4. Whether the PCRA court committed reversible error by denying Mr. Gleason's PCRA claim that trial counsel was ineffective for failing to adequately prepare Mr. Gleason to testify at trial?

Gleason's Brief at 4 (renumbered and unnecessary capitalization omitted).

Our review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the PCRA court's determination and its decision is free of legal error. *See Commonwealth v. Mullen*, 267 A.3d 507, 511 (Pa. Super. 2021), *appeal denied*, 275 A.3d 488 (Pa. 2022). This Court must defer to the findings of the PCRA court if the record contains any support for those findings. *See Commonwealth v. Boyd*, 923 A.2d 513, 515 (Pa. Super. 2007); *see also Commonwealth v. Raymond Johnson*, 966 A.2d 523, 539 (Pa. 2009) (stating that "[a] PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts"). Where the petitioner raises questions of law, the standard of review is *de novo,* and our scope of review plenary. *See Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). We may affirm the decision of the PCRA court if it is correct on any basis. *See Commonwealth v. Hutchins*, 760 A.2d 50, 55 (Pa. Super. 2000).

In his first issue, Gleason asserts that he is entitled to a new trial because the Commonwealth violated its *Brady* obligations by failing to disclose the toxicology report before trial.

The following precepts govern our review of the denial of a *Brady* claim. It is well settled that a prosecutor has the obligation under *Brady* to disclose all favorable evidence that is material to an accused's guilt or punishment.

*See Commonwealth v. Bagnall*, 235 A.3d 1075, 1085 (Pa. 2020). To establish a *Brady* violation, a PCRA petitioner has the burden of proving that: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued." *Id*. at 1086 (citation omitted). Materiality requires the petitioner to show that the favorable evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Commonwealth v. Natividad*, 200 A.3d 11, 26 (Pa. 2019) (citation and quotation marks omitted). The assessment of materiality under *Brady* extends to the petitioner's ability to investigate alternate defense theories and formulate and present trial defenses, including evidence affecting the credibility of a witness. *See Commonwealth v. Ly*, 980 A.2d 61, 76 (Pa. 2009); *Commonwealth v. Green*, 640 A.2d 1242, 1245 (Pa. 1994). To be entitled to a new trial based on the Commonwealth's failure to disclose information relating to a witness's credibility, the petitioner must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence. *See Commonwealth v. Simpson*, 66 A.3d 253, 266 (Pa. 2013).

Gleason asserts that he established a *Brady* violation based on the prosecutor's failure to disclose the toxicology report before trial. The toxicology report, he asserts, was material because it supports his trial testimony that Ackley-Churchill began overdosing when he was driving, would

have rebutted the Commonwealth's impeachment of his trial testimony, and would have contradicted the Commonwealth's attacks on his credibility. Gleason contends that the timely disclosure of the toxicology report could have altered the defense's trial strategy because it would have supported a justification defense and explained why he was speeding. Noting that the jury initially reported it was deadlocked, Gleason asserts that the absence of the toxicology report deprived him of fair consideration of a justification defense and of his credibility and reliability as a witness. Gleason thus concludes that the Commonwealth's failure to produce the toxicology report before trial undermines confidence in the verdict.

The PCRA court rejected Gleason's **Brady** claim, reasoning that although the Commonwealth inadvertently failed to disclose the toxicology report before trial,[8] the toxicology report was not material. **See** PCRA Court Opinion, 4/12/21, at 4-5. The court noted that Gleason did not obtain an expert to

---

[8] Although the Commonwealth maintains that it disclosed the toxicology report to Gleason before trial, the record supports the PCRA court's finding that the prosecutor inadvertently failed to disclose the report, and we therefore must defer to the court's finding. **See** PCRA Court Opinion, 4/12/21, at 2, 4; **see also** N.T. PCRA Hearing Day 2, 1/26/21, at 62; **Boyd**, 923 A.2d at 515. We note that the parties and the court did not address whether Gleason would have had equal access to the toxicology report. **Cf. Commonwealth v. Spotz**, 896 A.2d 1191, 1248 (Pa. 2006) (noting that "no **Brady** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence" (citation and quotation marks omitted)). However, given the absence of any focused findings of fact on this point and argument from the parties, we decline to consider this point *sua sponte*.

opine that the toxicology report supported his assertion that Ackley-Churchill was overdosing immediately before the accident. *See id*. at 4-5. In any event, the court concluded that Gleason could not have raised a justification defense because he did not accept full responsibility for his actions and he caused greater harms than he sought to prevent. *See id*. at 5 (discussing section 503). The court also found there was overwhelming evidence establishing Gleason's guilt because he collided with Wimer's vehicle while traveling at a high rate of speed in the wrong lane of traffic, which resulted in the deaths of McKay and Ackley-Churchill and injuries to Wimer. *See id*. at 3.

Following our review, we agree with the PCRA court's conclusions that a justification defense was not available to Gleason and a new trial is not required, although for slightly different reasons.[9] *See Hutchins*, 760 A.2d at 55. To have asserted a justification defense at trial, Gleason was required to proffer: (1) there was a clear and imminent harm to Ackley-Churchill; (2) he could reasonably expect that his actions would be effective in avoiding the harm; (3) there was no legal alternative effective to abate the harm; and (4)

_____

[9] We note that the Commonwealth asserts that the justification defense was unavailable based on 18 Pa.C.S.A. § 503(b) (stating that when the underlying charges involve recklessness or negligence, the defense is not available when the actor recklessly or negligently brought about the situation that required his actions or recklessly appraised the necessity of his conduct). We disagree. There is no indication in the trial record that Gleason recklessly or negligently brought about the situation that he asserted required speeding, *i.e.,* the asserted overdose situation, and the Commonwealth does not argue that, assuming his testimony about the overdose was true, he recklessly or negligently appraised the necessity of his conduct. *See* 18 Pa.C.S.A. § 503(b).

the legislature has not precluded the defense by a clear and deliberate choice regarding the values at issue. **See Commonwealth v. Capitolo**, 498 A.2d 806, 809 (Pa. 1985); **see also** 18 Pa.C.S.A. § 503(a)(1)-(3). Gleason bore, and as the PCRA petitioner, continued to bear, the burden of establishing all four elements of the defense to demonstrate that it applied. **See Capitolo**, 498 A.2d at 809 (holding that if a defendant's proffer on one element of justification is deficient, "the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense").

Here, Gleason's reliance on the recently-disclosed toxicology report focuses solely on the first element of the defense, that is, that Ackley-Churchill was in clear and imminent harm. Although the toxicology report contained information that Ackley-Churchill's blood contained several controlled substances, some at high levels, Gleason failed to present any expert evidence to show that Ackley-Churchill was overdosing at the time of the crash. Therefore, there is support in the record for the PCRA court's conclusion that Gleason failed to establish that the toxicology report helped to establish the first element of justification. **See Capitolo**, 498 A.2d at 809 (noting that the harm a defendant seeks to prevent cannot be dubious or speculative); **cf. Commonwealth v. Hoke**, 552 A.2d 1099 (Pa. Super. 1989) (holding that Hoke's testimony that he fled the scene of an accident because the victim jumped on the hood of his car failed to establish a clear and imminent harm; the record was ambiguous as to whether the victim threatened Hoke, and any

harm Hoke could have faced was speculative because Hoke was in his car). Accordingly, the court did not abuse its discretion by refusing to speculate, in the absence of expert testimony, that the toxicology report would have bolstered Gleason's testimony he was facing a life-or-death situation.

In any event, as to the fourth element of justification, which requires consideration of the legislature's balancing of the values at issue, Pennsylvania law has long recognized that "[e]ven if a known emergency exists, that does not justify the driving of a motor vehicle with a reckless disregard of the safety of others." *Mashinsky v. City of Philadelphia*, 3 A.2d 790, 792 (Pa. 1939); *see also Junk v. East End Fire Dept.*, 396 A.2d 1269, 1272 (Pa. Super. 1978) (noting that emergency vehicles may be excluded from liability for violation of traffic laws when driven with due care). The current version of 75 Pa.C.S.A. § 3105, Drivers of emergency vehicles, codifies similar principles that even a driver of an actual emergency vehicle cannot disregard the safety of others when responding to an emergency. *Cf.* 75 Pa.C.S.A. § 3105(b)(3), (e) (permitting the driver of an emergency vehicle responding to an emergency call to "[e]xceed the maximum speed limits so long as the driver does not endanger life or property" and imposing a continuing duty "to drive with due regard for the safety of *all* persons" (emphasis added)). Although section 3105 applies to emergency vehicles, it supports the conclusion that the legislature did not intend the defense of justification be available for an ordinary citizen, like Gleason, to disregard the safety of others, even if a passenger were facing a medical emergency.

Based on the foregoing, the PCRA court properly concluded that Gleason could not have established a justification defense. ***See*** PCRA Court Opinion, 4/12/21, at 4-5. The Commonwealth's trial evidence indicated that Gleason was driving eighty-three miles per hour before the crash, far in excess of the fifty-five mile per hour speed limit. ***See*** N.T. Trial Day 1, 2/13/17, at 129, 131. Gleason himself admitted to driving seventy-five miles per hour before the crash. ***See*** N.T., Trial Day 2, 2/14/17, at 157. Additionally, Gleason persisted in his attempt to pass the truck around the bend in the road, which was designated as a no-passing zone and where his line of sight was so limited that even Gleason testified that Wimer's vehicle appeared to come out of nowhere. ***See id***. at 157, 175-76. Given the overwhelming evidence that Gleason endangered the lives, property, and safety of others when he persisted in his attempt to pass the truck, and thereby drove with a disregard of the safety of others, a justification defense was not available at trial. ***Cf.*** 75 Pa.C.S.A. § 3105; ***Mashinsky***, 3 A.2d at 792.[10]

Moreover, we discern no support for Gleason's assertion that the Commonwealth's failure to disclose the toxicology report before trial resulted in an unfair consideration of his credibility at trial. As noted above, a justification defense was not properly before the jury. Additionally, because

---

[10] Notably, Gleason also does not argue that he met the second and third elements of justification, *i.e.*, that he could reasonably expect that his actions would be effective in avoiding the harm and that there was no legal alternative effective to abate the harm. Therefore, we could find waiver and affirm the PCRA court's legal conclusion on that basis as well.

Gleason failed to support his claim with expert evidence discussing the significance of the toxicology report to support his testimony that Ackley-Churchill was overdosing, the report would not have bolstered Gleason's testimony that she was overdosing, rebutted Beinhower's testimony that she appeared to be talking before the accident, or rehabilitated his credibility after the Commonwealth attacked Gleason's testimony as a fabrication and as "impossible" based on Beinhower's testimony.

To the extent Gleason asserts that the outcome of the trial was unfair because the jury initially indicated that it was deadlocked, he presumes that the initial deadlock concerned his credibility of his reason for speeding, rather than the issues and defenses properly before the jury. We decline to join such speculation on the jury's length of deliberation where overwhelming evidence supported Gleason's conviction and there is no indication that the absence of the toxicology report resulted in a disadvantage to the defense or an unfair advantage to the Commonwealth. Thus, we conclude that the Commonwealth's failure to disclose the toxicology report did not affect the fairness of the outcome of Gleason's trial. *See Simpson*, 66 A.3d at 266.

For these reasons, we affirm the PCRA court's conclusions that although the Commonwealth failed to disclose the toxicology report, the toxicology report was not material, and Gleason's *Brady* claim, therefore, did not merit a new trial.

Gleason's remaining three issues assert that trial counsel was ineffective. It is well settled that counsel is presumed to be effective, and the

burden of demonstrating ineffectiveness rests on the PCRA petitioner. ***See***

***Commonwealth v. Rebecca Johnson***, 236 A.3d 63, 68 (Pa. Super. 2020)

(*en banc*). To obtain relief on a claim of ineffective assistance of counsel, a

PCRA petitioner must establish that: (1) the underlying claim has arguable

merit; (2) no reasonable basis existed for counsel's action or inaction; and (3)

the petitioner suffered prejudice. A failure to satisfy any prong of the

ineffectiveness test requires rejection of the claim. ***See Commonwealth v.***

***Solano***, 129 A.3d 1156, 1163 (Pa. 2015).

Defense counsel, in preparing for trial, has a duty to undertake

reasonable investigations or make reasonable decisions that render particular

investigations unnecessary. ***See Raymond Johnson***, 966 A.2d at 535. The

duty to investigate includes a duty to interview potential witnesses unless the

failure to so do is part of a reasonable strategic decision. ***See id***. A petitioner

establishes counsel was ineffective for failing to call a potential witness by

demonstrating:

> (1) the witness existed; (2) the witness was available to testify
> for the defense; (3) counsel knew of, or should have known of,
> the existence of the witness; (4) the witness was willing to testify
> for the defense; and (5) the absence of the testimony of the
> witness was so prejudicial as to have denied the defendant a fair
> trial.

***Id***. at 536.[11]

---

[11] The PCRA court addressed all of Gleason's ineffective assistance of counsel claims collectively and explained that trial counsel diligently prepared for trial, maintained communications with Gleason and his family, developed a
*(Footnote Continued Next Page)*

Gleason's first ineffective assistance of counsel claim focuses on trial counsel's failure to discover and use the toxicology report as "compelling evidence" to support Gleason's explanation for speeding. However, because we have concluded that Gleason's **Brady** claim did not merit a new trial, his derivative ineffectiveness claim fails for the same reasons. **Cf. Commonwealth v. Wholaver**, 177 A.3d 136, 159 (Pa. 2018) (rejecting Wholaver's concomitant ineffective assistance of counsel claim that trial counsel should have discovered and used alleged **Brady** material when Wholaver failed to establish that the absence of the alleged **Brady** material undermined confidence in the verdict).

Next, Gleason asserts that trial counsel was ineffective for failing to investigate and call witnesses to bolster his credibility with testimony that, before trial, he told his mother Ackley-Churchill was overdosing and his memory of his reasons for speeding had improved after the accident.[12] As stated above, a justification defense was not available at trial and the Commonwealth's attack on Gleason's credibility about an overdose did not

_____

reasonable trial strategy based on an alleged mechanical malfunction that highlighted the Commonwealth's failure to preserve evidence, and reasonably advised against a justification defense. **See** PCRA Court Opinion, 4/12/21, at 6-7. The PCRA court further determined that Gleason did not establish prejudice given the trial evidence of his guilt, most of which was uncontradicted. **See id**. at 7.

[12] Gleason also claims that other unnamed witnesses could testify that Ackley-Churchill had used drugs in the days before the accident. However, aside from the questionable relevance of such evidence, Gleason did not call any witnesses at the PCRA evidentiary hearings to establish the arguable merit of this claim.

result in an unfair trial. Thus, we conclude trial counsel's decision not to call Gleason's mother to rehabilitate his credibility by testifying about his pretrial statements about an overdose or the improvements to his memory before trial did not result in prejudice requiring a new trial.

Gleason further claims that trial counsel was ineffective for failing to prepare him to testify, was unprepared to bolster his testimony, and did not advise him of the impact of the Commonwealth's attacks on his credibility. *See id*. at 42-43. Gleason essentially faults trial counsel for single-mindedly pursuing other defenses to the exclusion of Gleason's intended justification defense. *See id*. However, trial counsel properly advised Gleason that justification was not available as a defense where Gleason drove in a manner that disregarded the lives and property of others, and he advised Gleason not to testify. *See* N.T. Trial Day 2, 2/14/17, at 148; *See* N.T. PCRA Hearing Day 2, 1/26/21, at 68-69. Gleason presents no specific argument how any further advice about his testimony would have altered his trial testimony or affected his overall decision to testify against trial counsel's advice. Thus, Gleason has failed to establish any prejudice resulting from the alleged lack of advice after he elected to testify at trial.

Accordingly, having reviewed Gleason's claims of ineffective assistance of counsel, we discern no basis upon which to conclude that the PCRA court's decision to deny relief was in error.[13]

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2022

---

[13] Although not included in his statement of questions, Gleason also asserts that he suffered cumulative prejudice from trial counsel's inactions concerning the investigation and presentation of a justification defense and the bolstering of his trial testimony. We have already considered Gleason's assertions that he received an unfair trial and need not engage in a separate cumulative prejudice analysis.